Marvin, J.
Suit was brought in the court of common pleas by Charles W.' Harkness, as administrator, against these heirs, of Schiely, and the facts are agreed, and are, substantially, these:
Michael Schiely was the owner of certain real estate in Cleveland, fronting on Willson avenue. On the 19th day of November, 1873, he executed a lease of that property to Stephen V. Harkness,. the term to begin on the first day of December, 1873, and continue for a period of twenty years. Harkness was to pay a certain annual rental, and in addition to that the terms'of the lease are that he shall pay to Schiely all taxes and assessments for improvements that shall be levied upon the property during the continuance of the term granted by the lease.
■In 1888, on the first day of March, Harkness died. The administrator, Charles W. Harkness, then took into his *178 possession this leasehold estate as a part of the personal estate of the deceased Stephen V. Harkness.
Some time before the lease expired — the time is not given in the agreed statement of facts- — -and before the assessments, which are the subjects of this controversy, were levied, Schiely died intestate, leaving the defendants here, as have already stated, his heirs at law.
On the 8th of September, 1892, the city of Cleveland levied an assessment of $5.25 per-foot front for the improvement,grading and paving of Willson avenue, and on the 10th of September, 1893, the city levied a further assessment of $1.75 per foot front for the same purpose upon this same property.
Instead of paying these assessments to Schiely or to the owners of the property,^who succeeded to Schiely’s estate by inheritance, by consent and agreement all around, the assessments were paid directly to the city officers, so that they never passed through the hands of the Schielys,
The improvements were made upon the street, and on the 10th day of January, 1894, that being one month after the expiration of the term granted by the lease, while Harkness, the administrator, was still in possession of these premises, but claiming no right to such possession other than that certain*buildings had ben erected upon the lands by Harkness, and that the terms of the contract between the lessor and the lessee had not been fully complied with as to the payment for such buildings, and when he was holding on for the purpose of having an adjustment in regard to that matter, the Cleveland City Street Railway Company, being desirous of constructing a street railway along Willson avenue, sought the consent of the property owners fronting upon that street, because under the statute, before a franchise could be granted to the street railway company to construct such railroad, they must obtain and have filed with the proper officers- of the city the consents *179 of one-half of the property owners, computed by the foot front. They applied to the heirs of Michael Sehiely,and obtained such consent from a part of these heirs, but not from all of them.
Upon obtaining these consents, and for the purpose of obtaining them, the street railway company promised and agreed with the property owners that it would accept no franchise from the city to construct such road, which should not contain a provision that the railrod company would reimburse the tax payers or the owners of the property who had paid for the improvement of the street, such share of that money so paid as would pay for the pavement of so much of the street along the line of it as was bounded on the east by a line one foot east of the east rail of the street railroad; and on the west by a line one foot west of the west line of the street railroad, this to be counted as the proportionate share that the railroad company should reimburse the abutting property owners for.
On the 19th day of February, 1894, the city council passed an ordinance granting the franchise to the street railroad company to construct the road. The language of that franchise, so far as it is applicable or necessary to call attention to it here, is,that the street railroad company will pay to the owners of property, within sixty days after the acceptance of this ordinance, on such paved portion of said Willson avenue their pro rata share of the amounts heretofore paid by them, or by their predecessors in title, for such pavement as is embraced in a strip sixteen feet in width, extending the entire length of the same; and shall pay the city for a strip sixteen feet in width at all street intersections.
The language differs somewhat from the agreement made with the property owners. The language of the agreement is that the street railway company will reimburse those who have paid, etc., and the language of the ordinance is that *180 the street railroad company will pay to the property owners on such paved portion of said Willson avenue their pro rata share of the amounts heretofore paid by them or their predecessors in title. In the ordinance the , strip to be paid for is spoken of as a sixteen foot strip, and in the agreement it was to be bounded by the line which I have mentioned and which I suppose is practically the same,
' That franchise was accepted by the railroad company, and the amount to be paid upon the property which was under lease to Harkness is agreed to be $550.00. That amount the railroad company have, by agreement of the parties, placed in the keeping of one of the banks of Cleveland, and it is drawing interest, and it is to be paid to such party as shall be ordered by the court, and the question is to whom it belongs — to whom it shall be paid.
Counsel who have presented the case have not found any authority directly in point, as we conceive, and as we understand counsel to say.
We have been equally unable to find any case directly in point.
We are cited to cases by counsel for the administrator of the Harkness estate, which clearly establish that, where one pays for another money which ought not to have been paid, and there is a reimbursement on that ground, the party who paid it is entitled to have that money paid back to him. One of the cases cited is that of Platt’s Administrator, etc. v. Lear, Executor, etc., 3 Carr & Payne, 561. An attorney’s clerk, having been sent out to make a collection, accepted 168 pounds less than the amount of the claim; and rather than lose his employment,or for some other reason,he paid of his own money 100 pounds. But later the debtor paid the entire amount of his claim. The clerk being dead, his administrator brought suit and maintained his action to be paid back Ihe 100 pounds, the .court holding that the party who paid the money was entitled to have it back, where he debtor paid it to the original creditor.
*181 But this, it seems to ug, is not based upon the same reason. If this money paid by the property owners had been for an amount more than sufficient to make the street improvement, as is sometimes the case when the council levies a greater assessment than turns out to be necessary, and part is to be paid back., nobody would doubt but that that which was to be paid back should be paid to the man who first paid it, and that in such case the administrator of Harkness would be entitled to have that money paid back to him. Such is the fair conclusion to be drawn from the case of Russell v. The Mayor of New York and others, 85 N. J. 330. If this is that kind of a case, if the same reasoning applies to this as applies to that, if it ought to be governed by the same rule, clearly this money ought to be paid to Harkness.
But is it to be governed by the same rule?
The language of the ordinance is that the money paid by the property owner or his predecessor in title shall be paid to the property owner. It cannot, of course, be said that the party holding this term for years was the predecessor in title to the heirs of Schiely; but it is difficult to distinguish between the rights of the Schielys to this money, as the facts are, and what their rights would have been if they had purchased from Harkness.
It is clear that the purpose of the city council, in passing the ordinance granting this franchise, was to secure the payment to property owners of money that had been paid. When these franchises are ganted, the city requires something from the railroad company to whom the franchise is granted, and for some reason that seems to be acquiesced in everywhere,it is required usually where the streets are about to be paved, to pay for paving that portion of the street bounded by a line one foot outside of each side of the street railway tracks. In this case the property owners whose property abutted on the street where the pavement had already been made, should be put on an equality with the *182 property owners whose property abutted on that portion of the street not yet paved. I can think of no reason why the street railroad company, as a part of the consideration for its franchise, should pay to the property owners abutting upon the line of the railroad, rather than to the general public, except for some reason it is conceived that because of the construction of a street railroad there is a sense in which the abutting property owners are damaged; certainly pavements outside of the tracks will be worn faster than they otherwise would, and there are doubtless other reasons why the owners of abutting property ought to be compensated for letting the street railroad pass in front of their property. For some reason that is the universal custom, so far as I know; certainly the manner in which the street in front of the property is used after the expiration of the term granted by the lease was of no interest to the lessee other than it was of interest to the public in general, while it might be of great importance to the property owners.
If that is the reason why it was proper for the council to require money to be paid, it seems clear it should go to the property owners, and not to tie administrator of Harkness. Harkness paid nothing which was not legally and properly assessed and applied to the proper purpose. By reason of a subsequent arrangement between the city and the street railroad company, part of that money is to be paid back by the street railroad company to some one. If the property had been sold, the provision of the franchise ordinance is that it shall be paid to the property owner if the money was paid by the predecessor. The same reasoning that would require money in that case to be paid to the property owner would, as we think, require it to be paid to the property owners in this case. The court of common pleas so held, and we think there was no error in that holding.
This question has occurred to me, that the judgment was *183 for the defendants, and one of the defendants was the administrator of the estate of Schiely. I do not see what interest the administrator has in this money. It is not going back to the estate of the deceased Schiely, but to the property owners.
Messrs. Henderson & Quail, for Plaintiffs,
Hon. J. M. Jones, for Defendants.
But it is said by counsel that there is no controversy about that matter, and it need not, therefore, be considered. The judgment of the lower court is affirmed.